ARTHUR M. MICHAEL V. ROBERT L. BUSBY ET AL.

No. 7867. Decided April 15, 1942.
Rehearing overruled June 17, 1942.
(162 S. W., 2d Series, 662.)

*Johnson & Rogers* and *Swearingen & Miller*, of San Antonio, for plaintiff in error.

The contract was one which under the statute of frauds was required to be in writing, and could not be modified, changed, altered, or rescinded by parol agreement between the parties, and parol evidence was inadmissible to affect such a contract or to vary any of its provisions. 27 C. J. 327; Hargrove v. Edmont Hotel Co., 125 S. W. (2d) 415; Robertson v. Melton, 131 Texas 325, 115 S. W. (2d) 624; O'Mara v. Hall, 134 S. W. (2d) 348.

*John P. Giles, Morriss & Morriss, Dave Watson, D. A. Mc-Askill,* and *T. M. West,* all of San Antonio, and *Dan Moody* and *J. B. Robertson,* both of Austin, for defendant in error.

The Court of Civil Appeals properly reversed the judgment of the district court became the verbal agreements held valid by the Court were both made before the time for performance of the written contract of September 16, 1916, had arrived and therefore were valid even if the written contract was within the terms of the Statute of frauds. Gulf Prod. Co. v. Continental Oil Co., 139 Texas 183, 164 S. W. (2d) 488; Watkins v. Arnold, 60 S. W. (2d) 476; Allen v. Allen, 101 Texas 362, 107 S. W. 528; Grover v. Hawthorne, 62 Or. 77, 121 Pac. 808.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Frio County, Texas, by Mrs. Lorena H. Busby, joined by her husband, O. M. Busby, against Arthur M. Michael, to recover the title to and possession of a tract of about 692 acres of land, in Frio County, Texas, and for an accounting. The venue was changed to Bexar County, where trial was had. It appears that while this suit was pending Mrs. Busby died, and her heirs were made parties plaintiff. It is shown that O. M. Busby conveyed his claim in this land to Mrs. Busby's other heirs, and he was dismissed

as a party plaintiff. Arthur M. Michael is sued as the successor to the rights and title of Louis M. Michael, deceased. It is alleged that Louis M. Michael, prior to his death, held this land for the benefit of Mrs. Busby, and that therefore her heirs are entitled to recover it from Arthur M. Michael, who is holding and claiming under Louis M. Michael, his deceased father.

The evidence and pleadings in this case are very extended and complicated. They deal with the title to this land from many angles. It is our opinion, however, that whatever rights or title Mrs. Busby had in this land prior thereto were merged into a certain written contract, dated September 16, 1916, and executed by Lorena M. Busby, joined by her husband, O. M. Busby, and Louis M. Michael. Also, the above contract was executed by the attorneys of the above-named parties. The contract is rather lengthy. It is set out in full in the original opinion of the Court of Civil Appeals in this case, and in the interest of brevity we refer to the contract as set out in that opinion. 149 S. W. (2d) 685.

A reading of the above contract will disclose that it contains many provisions and statements not now directly germane to any issue in this case. As pertinent here, such contract limited Mrs. Busby's interest in this land to certain rights fully defined therein. In other words, regardless of what rights Mrs. Busby may have had in or regarding this land, prior to the execution and delivery of such contract, they were all merged into and fully fixed and defined thereby. Such is the plain import and purpose of the contract.

By the terms of the above contract it was agreed that Mrs. Busby had some character of claim against this land as a creditor of her husband, for a certain amount of money belonging to her, which was used by her husband in purchasing the same. It was also agreed that Louis M. Michael had a judgment lien for about $7,000.00 against this land. At this point we deem it expedient to quote the following provisions of the contract:

"And it is further understood, agreed and contracted, and this is an essential part of this agreement entered into and made part of this contract, that all parties hereto will aid by all legal and proper means to carry this agreement into effect, that the Michael judgment lien as it existed on the

abstract judgment record of Frio County, Texas, on and prior to the 10th day of March, 1916, shall be revived and foreclosed with all convenient legal speed, and an order of sale issued for the sale of said land described herein, and an execution of said judgment of said Louis M. Michael; and in the event of the revival of said judgment lien, issuance of order of sale and of sale thereunder that he, said Louis M. Michael, will accept the sum and amount of Twenty-five Hundred Dollars, with five hundred dollars attorney's fee to be paid Leo Tarleton, and Ryan & Matlock, attorneys for said Michael, on said intervention suit, and costs of suit, in all Three Thousand Dollars, and costs, in full settlement and compromise of said judgment lien or otherwise against said Oscar M. Busby in favor of said Michael; the said amount to be paid in cash, or at the option of Mrs. Lorena Busby, and Oscar M. Busby, or other assignee or holder of her interest in this contract and agreement, to be secured by first lien on said described land, or other real property satisfactory to the holders and each of them, of the Three Thousand Dollars to be paid as compromise of the Michael judgment against Oscar M. Busby; and in the event said compromise amount is not paid in cash but the same is deferred and secured as above provided, then said Three Thousand Dollars shall bear eight per cent interest per annum, and time of payment fixed at not more than two years from the date this offer of compromise takes effect for cash in the first instance.

. "And for further and more explicit understanding, it is argeed and contracted, that should Louis M. Michael be the purchaser of said land upon which his lien rests by a credit on said judgment by his bid, for the full amount of his said judgment of about seven thousand dollars, more or less, he will, irrespective of how much credit on said judgment his purchase price of said land may be, he agrees, upon payment of said compromise amount of three thousand dollars to convey by special warranty deed, the land above described, should he get sheriff's deed to the same, to Mrs. Lorena Busby, or to any other person she may in writing designate as the vendee thereof. ·

"It is well understood that the said Louis M. Michael is agreeing to and binding himself to take less than one-half of the unpaid judgment now valid and subsisting in his favor against Oscar M. Busby and will release said Oscar M. Busby from any further payment on said judgment, when this compromise set-

tlement is completed and carried into effect, and that time in which it is to be closed is important, and all parties pledge themselves to do all in their power legally and proper to be done to secure at as early date as possible the judgment of the matters in issue, the sale of said land and completion of this agreement; but should said judgment lien of said Louis M. Michael be not revived, or if revived, not foreclosed for any reason, or the said three thousand dollars, compromise amount of said judgment of said Louis M. Michael against said Oscar M. Busby, be not paid or secured as provided, then it is understood the consideration for this contract shall be held to have failed, and the proposition for compromise made herein by said Louis M. Michael will no longer exist."

The effect of the part of the contract above quoted was to provide that, in the event Louis M. Michael should become the purchaser of the above land by a credit on his judgment, and regardless of the amount of such credit, he, Michael, would convey the land by special warranty deed to Mrs. Busby, or to whom she might, in writing, designate, for a consideration of $3,000.00. Also, under the above-quoted provisions of the contract, Mrs. Busby had the right to pay the $3,000.00 consideration in cash, or she could have deferred the payment of such sum for two years from the time Michael took title, by giving a first lien on this land, or by giving a first lien on other real property, satisfactory to Louis M. Michael, for $3,000.00, plus eight per cent. interest thereon.

The plain result of the written cntract here involved was to give Louis M. Michael the right to take title to the 692 acres of land here involved in his own right under his judgment lien above mentioned. The further plain result of such contract was to give Mrs. Busby an option or right to purchase such land from Michael for a consideration of $3,000.00, to be paid in cash or in a lien for that amount, due in two years, bearing eight per cent. interest. It is conclusively shown that Mrs. Busby never exercised, or offered to exercise, this option. It follows that she never acquired any title thereunder.

As we understand this record, it is contended by the Busby heirs that after the above-described written contract was entered into, the terms thereof were altered and changed by a parol agreement or by parol agreements, between Louis M. Michael and Mr. and Mrs. Busby. We shall not lengthen this opinion by attempting to make a detailed statement of the

pleadings of the Busby heirs and the testimony in regard to such contended-for oral changes or modifications of the above written contract. It is sufficient to say that thereunder the Busby heirs contend that the terms of the written contract, defining Mrs. Busby's right to purchase this land from Michael, were altered and changed, so as to award her different and additional rights, not granted or provided by the written contract.

Our Statute of Frauds expressly provides that no action shall be brought in any court upon any contract for the sale of real estate, "unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized." Article 3995, R. C. S. 1925. Clearly, under this statute, the agreement of Michael to convey this land to Mrs. Busby was required to be in writing and signed by the parties sought to be bound. Wheeler v. Haralson, 128 Texas 429, 99 S. W. (2d) 885.

■ It is the rule in this State, and the rule generally, that parties to a written agreement coming within the provisions of the Statute of Frauds may not, by mere oral agreement, alter or change one or more of the terms thereof, and thus make a new contract, resting partly in writing and partly in parol. 27 C. J., p. 327; Wheeler v. Haralson, supra; Robertson v. Melton, 131 Texas 325, 115 S. W. (2d) 624, 118 A. L. R. 1505. We quote as follows from the opinion in the case last cited:

"It is our opinion that such oral modification of the contract is prohibited by the statute of frauds, Article 3995, Revised Civil Statutes of 1925. The rule is that parties to a written contract coming within the provisions of the statute of frauds may not by mere oral agreement alter one or more of the terms thereof and thus make a new contract resting partly in writing and partly in parol, the reason for the rule being that, when such alteration is made, part of the contract has to be proven by parol evidence, and the contract is thus exposed to all the evils which the statute was intended to remedy. 27 C. J. pp. 327-328, Sec. 416; 25 R. C. L. p. 708, Sec. 352; Kistler v. Latham, Tex. Com. App., 255 S. W. 983-985; Adams v. Hughes, Tex. Civ. App., 140 S. W. 1163, application for writ of error refused; Ickert v. Minor, Tex. Civ. App., 22 S. W. (2d) 741; Fleming v. Todd, Tex. Civ. App., 42 S. W. (2d) 123."

It follows from what has been said that all oral agreements, if any, which may have been entered into between Mr. and Mrs. Busby and Louis M. Michael, attempting to alter or change the terms of the written contract between them, came within the prohibitions of Article 3995, supra, of our Statute of Frauds. It further follows that such oral agreements were and are unenforceable.

■ If we properly interpret their argument and brief, counsel for the Busby heirs contend that Louis M. Michael took title to this land under some character of trust for Mrs. Busby. We are unable to see how a trust in favor of Mrs. Busby could have resulted from the contract between her and Louis M. Michael. Under the plain terms of the contract, Michael was to become the purchaser of this land by taking title thereto. It was not agreed, either directly or by implication, that such title was to be taken in Michael's name for Mrs. Busby. To the contrary, it was agreed that Michael would convey the land to Mrs. Busby for a consideration fully defined. It was even agreed that if Mrs. Busby wanted time, Michael would convey and retain a lien on the very property conveyed. Such a contract certainly did not operate to vest in Mrs. Busby any equitable title to this land when Michael became the purchaser thereof. It merely gave Mrs. Busby an option to purchase. Friedsan v. Rose, 271 S. W. 417; Foster v. Ross, 33 Texas Civ. App., 615, 77 S. W. 990.

Trial of this case in the district court with a jury resulted in an instructed verdict for Arthur M. Michael, the defendant, and judgment accordingly. On original hearing in the Court of Civil Appeals that court affirmed the judgment of the district court on substantially the same holdings that we have made, supra. 149 S. W. (2d) 685. On rehearing the Court of Civil Appeals changed its original ruling and reversed the judgment of the district court and remanded this cause for a new trial. 149 S. W. (2d) 692. As we interpret it, the opinion on rehearing holds that the written contract between the Busbys and Louis M. Michael could be changed by parol agreement, because it did not provide for the sale of land by Michael to Mrs. Busby, but merely constituted an agreement on the part of Michael to sell, and on the part of Mrs. Busby to buy, a judgment held by Michael against Mrs. Busby's husband. In our opinion the contract did not bind Mrs. Busby to buy either the judgment or the land. It merely gave her an option to buy the land for $3,000.00 after Michael had acquired title

thereto under his judgment. In this connection the contract says, "* * * it is agreed and contracted, that should Louis M. Michael be the purchaser of said land upon which his lien rests by a credit on said judgment by his bid, for the full amount of his said judgment of about seven thousand dollars, more or less, he will, irrespective of how much credit on said judgment his purchase price of said land may be, he agrees, upon payment of said compromise amount of three thousand dollars to convey by special warranty deed, the land above described, should he get sheriff's deed to the same, to Mrs. Lorena Busby, or to any other person she may in writing designate as the vendee thereof." Clearly such agreement was a plain, direct, and unambiguous contract on the part of Michael to convey this land to Mrs. Busby for a recited consideration if he, Michael, should acquire it under his judgment, and that regardless of what his bid on such land should be. Such an agreement could not be construed into an agreement to sell and buy the Michael judgment.

■ The Court of Civil Appeals holds that the contract here involved constituted an agreement on the part of Michael to sell Mrs. Busby a judgment, because of the provision in the contract that he, Michael, would accept $3,000.00 in full settlement of the judgment. It is clear that the provision of the contract with reference to a settlement of the judgment, when read in connection with the balance of the contract, merely constitutes an agreement on the part of Michael that, in the event Mrs. Busby exercised her option to purchase, he, Michael, would hold no deficiency judgment against Mr. Busby. Simply stated, the provisions of the contract under discussion were an agreement to cancel, and not an agreement to convey a judgment. The agreement to cancel was conditioned upon Mrs. Busby's exercising her option to purchase the land.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the district court is affirmed.

Opinion delivered April 15, 1942.

Rehearing overruled June 17, 1942.

JUDGE C. S. SLATTON not sitting.