### TAYLOR et ux. v. GILL.
#### No. 2665.

Court of Civil Appeals of Texas. Eastland.
April 23, 1948.

Rehearing Denied May 21, 1948.

**364**

Lessing & Reid, of Abilene, for appellants.

McMahon, Springer & Smart, of Abilene, for appellee.

GRAY, Justice.

On March 11, 1947, C. W. Gill, as Seller, entered into a writen contract with George B. Taylor, as Purchaser, whereby the Seller agreed and obligated himself to sell to Purchaser, the South one-half of Lot 1, Block 3, Country Club Addition to the City of Abilene, Taylor County, Texas. Said contract was in the usual form generally used in sales of real estate. The consideration recited was $6,000 in cash to be paid from the proceeds of a G. I. loan as applied for by Purchaser to Abilene Savings & Loan Association. Purchaser was to execute his note for said amount, secured by vendor's lien on the property, together with deed of trust, which note, vendor's lien and deed of trust lien were to be transferred to said Loan Company. This was contingent on approval of the title and delivery by Seller of a warranty deed conveying said property to Purchaser. Said contract contained the following provision:

"In the event said loan is not approved as applied for this contract shall be null and void."

Purchaser, without paying any part of the consideration, was placed in immediate possession of the said property.

On June 19, 1947, said C. W. Gill filed suit in the District Court of Taylor County, Texas, against said George B. Taylor and wife. In the first count of the original petition, it is alleged that the defendant had wholly failed and refused to go forward and consummate said loan, although originally same had been approved by the Company, and had wholly failed and refused to pay any part of the consideration or to surrender possession of said property to plaintiff. Plaintiff further alleged that he had fully performed all the obligations imposed on him by said contract. Wherefore, he prayed for judgment decreeing said sales contract to be null and void and of no further force and effect; that his title to said property be quieted, for writ of possession, and such other relief in law and in equity to which he may show himself entitled.

In the second count by alternative plea only, plaintiff pleaded facts showing that defendants were indebted to him in the sum of $6,000, secured by an implied vendor's lien on said property and prayed (a) for specific performance of said sales contract, or (b) as a second alternative, said vendor's lien be established and foreclosed.

The third count was for appointment of a receiver for the property.

In the answer, defendants pleaded a collateral oral agreement entered into at the date of the written agreement; that on said date no house had been built on said lot, only a foundation for a house being at said time thereon. It was admitted that plaintiff constructed a house with attached garage, but that same was not in compliance with specifications for G. I. loans; that the agreed value of said lot alone was $600, and it was agreed that a house and garage of the reasonable value of $5,400 was to be erected, but that the improvements actually made by plaintiff were of the reasonable value of only $3,000. Defendants further pleaded valuable improvements made by themselves to said property in good faith; that plaintiff agreed and obligated himself in said oral agreement to comply with the specifications for G. I. loans; that plaintiff further represented to defendants that said loan could not be fully consummated until said improvements were fully completed, and that when this was performed, a conveyance of said property would be made to defendants, the consideration to be $6,000, evidenced by a note for said amount secured by vendor's lien; and that relying upon said representations, defendants did execute said written contract and made application for said loan to said Abilene Sav-

ings & Loan Association in the amount of $6,000. That defendants had at all times been ready, willing and able to proceed with an application for a G. I. loan as provided in said contract for an amount equal to the appraised value of said lot and house as actually constructed. Wherefore, they prayed that plaintiff take nothing by his suit; that said written contract be reformed to express the truth as to the consideration for said land; that the court find the reasonable value of said house as constructed; that plaintiff be required to sell and convey said land and premises to defendants for $600 plus the reasonable value of said house as constructed; that plaintiff be required to comply with the terms of the Act of Congress governing G. I. loans in order that defendants may procure such loan for an amount equal to what defendants were justly due plaintiff, and for such other and further relief to which they may be entitled. In the alternative, in the event that said contract be rescinded and possession of the property awarded to plaintiff, then defendants recover $600 expended by them in erection of permanent and valuable improvements in good faith.

By supplemental petition, plaintiff excepted to defendants' answer as follows: (a) That said answer showed on its face an oral contract or an oral modification of a written contract for the sale of land. (b) That said answer set out a contract for the sale of real estate partly in writing and partly oral. (c) That said answer set out an oral contract or oral modification of a written contract and attempts to modify, alter, reform and change a written contract by parol without any allegations of fraud, accident or mistake in connection with making said written contract or in the inducement thereof. (d) That said answer sets out an oral contract or oral modifications of a written contract, or a part oral and part written contract to give a lien on land. In exceptions (a), (b) and (d), plaintiff specifically pleaded the statute of frauds. All of said special exceptions were sustained by the court, and by reason thereof, the said answer was restricted to denials and plea of improvements in good faith, to which defendant duly excepted.

This was a jury case. At the conclusion of all the evidence, plaintiffs moved for an instructed verdict as to rescission of said written contract, stating grounds therefor, which motion was granted by the court, to which defendants duly excepted, but no appeal was prosecuted therefrom. Plaintiff then moved for an instructed verdict denying defendants any recovery for improvements. Said motion was denied.

Based upon the jury's answers to special issues, the court rendered judgment as follows: (a) Said above mentioned special exceptions were sustained. (b) Said written contract was cancelled and annulled. (c) Plaintiff was decreed to be the owner of the property involved, and entitled to the possession thereof; that his title thereto be quieted and plaintiff have his writ of possession. (d) That plaintiff recover of and from the defendants $325, same being the reasonable rental value of said property to September 30, 1947, and $65 per month thereafter until vacated by defendants. (e) That defendants recover of and from plaintiff $273 for improvements made in good faith to said property, enhancing the value of said property in that amount, said recoveries to offset each other to the extent granted. (The deficiency was paid by defendants.) (f) A receiver for the property was appointed. Motion for a new trial was overruled and defendants appealed.

Appellant's only point is as follows:

"This appeal is predicated solely on the proposition that the trial court erred in sustaining the plaintiff's exceptions to the defendants' answer and cross-action and striking the same from the pleadings of the defendants."

Appellee has two counterpoints:

1. "The trial court did not err in sustaining appellee's special exceptions to the defendants' answer."

2. "The trial court, having found and entered judgment to the effect that the sales contract in question was null and void and of no further force and effect, and the appellants having taken no exception to said ruling of the trial court, and not complaining of said ruling upon this appeal, the question of whether or not the

366

trial court was in error in sustaining the special exceptions of the plaintiff below becomes moot and the judgment of the trial court should be affirmed despite any error that may have been committed in overruling the special exceptions."

We do not deem it necessary to discuss at very great length the assignment raised. Appellants cite a number of authorities to the effect that under certain circumstances, parties may prove a contemporaneous oral agreement as collateral to a written contract. We freely concede that such is the law. But we know of no authorities holding that a written contract for the sale of real estate as required by the statute of frauds may be amended, altered, reformed or superseded by an oral agreement. Such holding would completely nullify and render ineffective that provision of the statute requiring contracts for the sale of real estate to be in writing. Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505; Michael v. Busby et al., 139 Tex. 278, 162 S.W.2d 662; Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885. Said cases further hold that parties to a written contract coming within the statute of frauds may not by mere oral agreement alter one or more of the terms thereof and thus make a new contract resting partly in writing and partly in parol. In Michael v. Busby, supra [139 Tex. 278, 162 S.W.2d 664], it is said:

"Our statute of frauds expressly provides that no action shall be brought in any court upon any contract for the sale of real estate, 'unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized.' Article 3995, R.C.S.1925. Clearly, under this statute, the agreement of Michael to convey this land to Mrs. Busby was required to be in writing and signed by the parties sought to be bound. Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885.

"It is the rule in this State, and the rule generally, that parties to a written agreement coming within the provisions of the statute of frauds may not, by mere oral agreement, alter or change one or more of the terms thereof, and thus make a new contract, resting partly in writing and partly in parol. 27 C.J., p. 327; Wheeler v. Haralson, supra; Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 626, 118 A.L.R. 1505. We quote as follows from the opinion in the case last cited: 'It is our opinion that such oral modification of the contract is prohibited by the statute of frauds, Article 3995, Revised Civil Statutes of 1925. The rule is that parties to a written contract coming within the provisions of the statute of frauds may not by mere oral agreement alter one or more of the terms thereof and thus make a new contract resting partly in writing and partly in parol, the reason for the rule being that, when such alteration is made, part of the contract has to be proven by parol evidence, and the contract is thus exposed to all the evils which the statute was intended to remedy. 27 C.J., pp. 327, 328, § 416; 25 R.C.L., p. 708, § 352; Kistler v. Latham, Tex.Com.App., 255 S.W. 983, 985; Adams v. Hughes, Tex.Civ.App., 140 S.W. 1163, application for writ of error refused; Ickert v. Minor, Tex.Civ.App., 22 S.W.2d 741; Fleming v. Todd, Tex.Civ. App., 42 S.W.2d 123.'

"It follows from what has been said that all oral agreements, if any, which may have been entered into between Mr. and Mrs. Busby and Louis M. Michael, attempting to alter or change the terms of the written contract between them, came within the prohibitions of Article 3995, supra, of our statute of frauds. It further follows that such oral agreements were and are unenforceable."

As has been hereinbefore stated, the trial court granted a rescission of said written contract and completely cancelled it, from which part of the judgment, no appeal was taken. In 10 Tex.Jur. pages 393, 394, Section 223, it is said:

"Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. As a general rule rescission puts an end to the contract, and in this respect a technical rescission is to be distinguished from the right of a party to abandon the contract as regards further performance, where the

other party renounces it and refuses further performance. The contract is not merely terminated, but is abrogated and annulled from the beginning. The rights and liabilities of the parties are extinguished, and they are restored to the relative positions which they would have occupied if no such contract had ever been made. If any cause of action exists in favor of either party against the other, it is necessarily independent of the contract and separate and apart from any of its terms. * * * Rescission of a contract for the sale of realty by the vendor re-invests the title in him as completely as if the contract had never been executed, and puts an end to a lien given by the contract for the purpose of securing its performance."

 Specific performance may be granted only on an enforceable contract. As to sales of land, the contract must be in writing. Assuming that appellant had been permitted to prove the oral agreement, it would have availed him nothing, because the Court would have been without power to enforce it. Further, when a written contract is annulled, the oral or collateral contract relating thereto also fails.

 It is also elementary that courts do not make contracts for litigants, neither would the remedy of reformation be available under appellants' pleadings and the evidence in this case. In the case of Long v. Humble Oil & Refining Company, 154 S.W.2d 925, 931, writ ref., the court quotes with approval from Williston on Contracts as follows:

"The rule as to reformation of a written contract is thus stated by Williston on Contracts, § 1549, Vol. III:

" 'The province of reformation is to make a writing express the bargain which the parties desired to be put in writing. Agreements of which they did not desire written expression will not be put into writing by decree of the court. Therefore, if parties intentionally make an oral agreement which is unenforceable for the reason that it is not in writing, the court cannot order a writing executed even though the parties erroneously supposed their oral bargain was legally valid. Similarly, if parties to a written instrument understood that part of their previous agreement has been omitted from the writing and rely on oral agreement with one another to vary or add in certain respects to the written agreement, whether they rely on moral obligation or believe that a variation is legally valid, equity cannot reform the writing by the insertion of the oral agreement.'

"Courts do not make contracts for litigants, and where the allegations of plaintiff's petition unmistakably state that certain written provisions of an assignment of mineral leases were knowingly, intentionally and deliberately inserted, such allegations necessarily close the door to re-writing the contract of the litigants, and omit therefrom written provisions which the litigants knowingly, intentionally and deliberately wrote into their contract. This is so elementary that no authority need be cited.

"What has just been said equally applies to the remedy which plaintiff seeks to invoke of having the court to rewrite the assignments, and not only omit therefrom the written provision relieving defendant from the obligation to preserve the leases, or develop them, but to write in lieu thereof provisions directly in conflict therewith under which defendant was obligated to do exactly that which said written provision relieved it from doing, which oral provisions it is alleged were knowingly, intentionally and deliberately not reduced to writing and not placed in said assignments. The remedy of reformation is not available under the allegations of plaintiff's petition, and the court did not err in sustaining a general demurrer thereto, insofar as the petition sought to state a cause of action to reform the contract, and to enforce the contract as reformed by giving damages for breach of such contract for the period prior to the grant of reformation, and for specific performance of said contract after reformation."

Appellants' point is overruled and the judgment of the trial court is affirmed.

Affirmed.