Billy BRIDEWELL, Appellant,

v.

Emory H. PRITCHETT et al., Appellees.

No. 18000.

Court of Civil Appeals of Texas,
Fort Worth.

March 9, 1978.
Rehearing Denied March 23, 1978.

Wynne & Jaffe, and Daniel J. Sheehan, Jr., Dallas, for appellant.

Gray, Whitten & Loveless, and Jack Gray and Michael J. Whitten, Denton, for appellees.

## OPINION

MASSEY, Chief Justice.

The appeal is from the denial of injunction to prevent sale of real estate by a trustee under a deed of trust. The application for injunction was ancillary to Billy Bridewell's suit against Emory H. Pritchett and his wife for specific performance of their contract. Joined is the Honorable George Hopkins who but for the injunction would have proceeded to sell the property.

■ Since this court was of the opinion that consummation of the sale of the real estate by the trustee would constitute interference with this court's jurisdiction of the appeal and result in the destruction of the subject matter we enjoined sale pending hearing of the appeal, and advanced submission. See *Padgett v. Mutual Building & Loan Association,* 504 S.W.2d 535 (Tex.Civ. App.—Fort Worth 1971, no writ).

Judgment of the trial court in denial of injunction is affirmed. By order of this date our prior injunction is dissolved.

The specific performance sought by Bridewell was for the Pritchetts to consummate a new contract with him to effect cancellation of the attempts to foreclose. The attempted foreclosure was upon real estate which had been purchased by Bridewell from the purchaser from the Pritchetts. In consideration of the Pritchetts' agreement for Bridewell's payment of $300.00 to Hopkins, plus payment of additional agreed amounts to the Pritchetts, all by cashier's checks, it was Bridewell's contention that his own performance or agreement was sufficient to make the contract one he was entitled to enforce.

There had in fact been a purported contract agreed upon by the parties which required performance by Bridewell as understood by him; for which there was to be return performance by the Pritchetts. However, it was the contention of the Pritchetts that Bridewell was lacking in the tender of all performances required of him by his failure and refusal to agree to pay in installments not only the principal amount of a purchase-money note executed by Bridewell's grantor and assumed by Bridewell, but also the future interest to accrue thereon at an increased rate above that provided by the note. Because of dispute over whether Bridewell would be required to agree to pay an increased interest rate appears to have been the sole occasion for the failure of consummation of a new contract. Bridewell contended that such an increase in interest was no part of the obligatory performance by him as his consideration; the Pritchetts contended that it was, and that there was no contract unless Bridewell so agreed.

Prior to time for delivery of the cashier's checks by Bridewell to the office of Mr. Hopkins there was discovery that there had been no specific agreement upon interest to be thereafter paid by Bridewell on the existent note obligation (or on a new note obligation). Hopkins telephoned Bridewell and notified him the amount of interest the Pritchetts required. Here the attempts to consummate a contract ended. Bridewell's suit for specific performance supplanted any further attempt by him. Neither Bridewell nor the Pritchetts have parted with anything.

Neither party has ever changed legal position to his or their detriment because of a belief that a completed contract had been accomplished. By reason of this, perhaps, we could affirm the judgment. See Restatement of the Law, Contracts, § 52, "Acceptance of Offer Defined," and § 90, "Promise Reasonably Inducing Definite and Substantial Action." However, we have adopted other reasons for affirmance.

We have concluded that as applied to the equitable proceeding to exact specific performance of contract the matter of interest to be paid by Bridewell was "of the essence" thereof, under the circumstances; that because there had been no "meeting of the minds" by both parties upon the matter of interest no binding contract had been effected. No contract having arisen nothing existed to be enforced. There was not impropriety in Hopkins proceeding with a trustee's sale and the trial court did not err in refusing to enjoin it.

 The Statute of Frauds is without application because the main purpose of Bridewell was to effect a new contract for his own benefit and not to answer for the default of his grantor. Already stated is that there had been assumption of the grantor's obligation on the original purchase-money note. *Gulf Liquid Fertilizer Co. v. Titus,* 163 Tex. 260, 354 S.W.2d 378, 386 (1962). Neither is the statute applicable because a real estate transaction is merely incidentally involved. *Garcia v. Karam,* 154 Tex. 240, 276 S.W.2d 255 (1955).

The purchase-money note executed in favor of the Pritchetts by Bridewell's predecessor in title—in payment for the real estate intended to be sold by the trustee—provided an interest rate of seven (7%) per cent per annum. It was Pritchetts' intention that the consummation of the contract with Bridewell was conditioned upon the latter's agreement that as applied to the scheduled payments on the amortized indebtedness, the principal remaining to be paid on the purchase-money note (or on a new note to be substituted), there would be an increase in the interest rate to the amount of eight and one-half (8½%) per cent per annum. Other of the agreed provisions of contract were satisfactory. The Pritchetts refused to "close" unless Bridewell would agree to this increase in the rate of interest. Through Mr. Hopkins' telephone call to Bridewell, before the cashier's checks had been delivered to Hopkins as agent for the Pritchetts, Bridewell was so informed.

Mr. Hopkins was employed by the Pritchetts as the substitute trustee to sell the real estate. Hopkins is an attorney. Nowhere does the record show that Hopkins was employed in the capacity of agent for the Pritchetts to effect a contract with Bridewell, though he began to act as such upon being contracted by Bridewell in the latter's attempt to accomplish a contract with the Pritchetts. Bridewell's communication with Pritchett was at all times through Hopkins. The situation poses a question of agency not necessary to be resolved. This is because we have concluded that even if Hopkins was agent for the Pritchetts for purposes of a new contract with Bridewell there never arose a completed contract.

The interest rate on the original purchase-money note having been 7% (amount other than "legal interest" of 6%) the matter of what should be the contract interest upon the principal indebtedness, to persist in the event of the parties' consummation of contract, did not constitute a "detail" which the court, in an interpretation of the contract, might have provided for them in the event they failed to make any provision themselves. Seven per cent (7%) was not "legal interest"; neither would 8½% have been "legal interest." To accord the greatest liberality of construction to the evidence of Bridewell would leave this Court obliged to treat the contract as one wherein there had never been any agreement upon the rate of interest.

 The general doctrine has been formulated by eminent judges: an agreement framed in general terms will be enforced where the law will supply the details; but if any of its details are to be supplied by modes which the court cannot adopt, there is then no complete contract capable of being specifically executed. Pomeroy, *Specific Performance of Contracts,* Third Ed. 1926, p. 394, "The Contract Must Be Complete," § 154, "Other material terms." What might constitute all the material terms of contract must of course be determined by a consideration of each contract separately.

 In this case we have concluded that by the circumstances it is correct to hold that the agreement upon the matter of interest amounted to a "detail" material to

the contract itself, and "of the essence" or on the substance of the contract. So it would have been had the parties' contract been reduced to writing; so it is where the agreements are by parol. Here there had never been anything other than conversations between Mr. Hopkins and Bridewell by which, according to Bridewell, there was the accomplishment of a completed contract.

The trial court's judgment was in denial of the application of Bridewell for injunction because there had been no "meeting of the minds" on the contract sought to be specifically enforced. This, we hold, was the correct determination as a matter of law. However, were we of the opinion that a fact issue was raised we would likewise conclude propriety of the judgment because there would have been no error in making the factual conclusion that there was no "meeting of the minds." Furthermore, because of this, the denial of the injunction was proper.

The judgment is affirmed. Our prior injunction preventing sale by trustee is dissolved.