**Rubye MANGUM, as Executrix of the Estate of La Vada Oakes and as Beneficiary of the Will of La Vada Oakes and Paul Bradley Walker and Brenda Walker Owens, Appellants,**

v.

**Trent TURNER and Donny Turner, Appellees.**

**No. 10–07–00004–CV.**

Court of Appeals of Texas, Waco.

Feb. 27, 2008.

Rehearing Overruled March 18, 2008.

Carl T. Schultz, III, Houston, for appellants.

Holloway Martin, Michael Thomas, Michael Thomas, PC, Mexia, Glenn W. Patterson, Jr., Sydney N. Floyd, Houston, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Rubye Mangum, as executrix of the estate of LaVada Oakes and as beneficiary of her will, sued Trent and Donny Turner to rescind three deeds from Oakes and her deceased husband to the Turners. The parties' attorneys orally agreed to settle Mangum's claims for $104,000, with the Turners paying Mangum $52,000 and Man-

gum receiving $52,000 from a fund in which royalty payments were being held. The oral settlement agreement was memorialized in the following "Rule 11 Agreement" that was filed to resolve an upcoming jury trial setting:

The parties to the above litigation agree that all matters in controversy have been settled to the satisfaction of the plaintiff and the defendants. It is anticipated that settlement documents and proposed dismissal with [*sic*] be presented to the Court for approval within one week of October 3, 2005.

This Rule 11 Agreement was signed by Mangum's attorney and the Turners' attorneys. Thereafter, the Turners' attorney drafted a "Full, Final and Complete Release" and sent it and a $52,000 check to Mangum's attorney. The Turners and their attorney signed the release and a letter instructing that $52,000 of royalty money be paid to Mangum. Mangum's attorney signed the release and sent it to Mangum for her signature. The Turners' attorney also sent a "Final Take Nothing Judgment" to Mangum's attorney, and both sides' attorneys signed their approval to its form.

Mangum refused to sign the release. The Turners then filed a motion to enforce the above-quoted Rule 11 Agreement, but that motion was denied by the trial court. The Turners eventually filed a counterclaim alleging that "a contract came into being between parties for the full and complete settlement of this litigation."

After severance of the Turner's counterclaim, a jury trial was held on it. The jury answered affirmatively that Mangum authorized her attorney to settle her suit against the Turners on the following terms: (1) the payment of $104,000 to Mangum; and (2) a release of the Turners, including a release of Mangum's claims that the Turners wrongfully acquired the

52 acres and two deeds to mineral estates owned by the Oakeses in Freestone and Limestone Counties. The jury also awarded the Turners $50,000 in attorneys' fees.

The trial court then made two sets of findings, one set under Rule of Civil Procedure 279 and the other set entitled, "Findings by the Court of Undisputed Evidence." Each set contains the following pertinent finding: "The Court finds that the settlement agreement between the parties was made prior to the time that Rubye Mangum refused to perform all or part of the settlement agreement." Mangum filed a motion for judgment n.o.v. and a supplemental motion for judgment n.o.v., which the trial court impliedly denied by entering an adverse final judgment on the findings challenged by Mangum. *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex.1999).

Based on the jury's finding and the trial court's finding that "an agreement to settle the case was entered into between the parties," the trial court's judgment ordered the Turners to pay Mangum $104,000 and that, in consideration of that payment, Mangum take nothing on her claims against the Turners. The judgment also awarded attorneys' fees.

## Issues on Appeal

Mangum appeals, asserting in five issues that the trial court erred in denying her motion and supplemental motion for judgment n.o.v. because:

1. the oral settlement agreement does not comply with the statute of frauds and is unenforceable;

2. the existence of the contract (the settlement agreement) was disputed but was not requested by the Turners and submitted to the jury over Mangum's objections and her re-

quested jury questions, and thus the Turners waived that issue;

3. jury questions on the contract elements of acceptance and mutual assent were not requested by the Turners and submitted to the jury over Mangum's objections and her requested instructions, and thus the Turners waived those issues;

4. the evidence is factually insufficient on the elements of acceptance, mutual assent, and execution and delivery for the trial court to have made findings on such omitted elements to enforce the settlement agreement; and

5. the trial court's finding that a settlement agreement was made does not overcome the statute of frauds and Rule 11.

## Standard of Review

■ A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict only when a directed verdict would have been proper. *See* TEX.R. CIV. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991); *see also Prudential Ins. Co. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000) (directed verdict proper

only when evidence conclusively establishes right of movant to judgment or negates right of opponent or evidence is insufficient to raise material fact issue); *Cain v. Pruett,* 938 S.W.2d 152, 160 (Tex. App.-Dallas 1996, no writ) (directed verdict proper when evidence reflects that no other verdict can be rendered and moving party is entitled to judgment as a matter of law). A motion for j.n.o.v. should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery. *Morrell v. Finke,* 184 S.W.3d 257, 290 (Tex.App.-Fort Worth 2005, pet. denied); *see also United Parcel Serv., Inc. v. Tasdemiroglu,* 25 S.W.3d 914, 916 n. 4 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) ("A court should grant a motion for judgment notwithstanding the verdict if a legal principle prevents a party from prevailing on its claim.").

## Statute of Frauds

■ Mangum's first and fifth issues assert that she was entitled to judgment n.o.v. because the statute of frauds, which she pled as an affirmative defense, precludes enforcement of the oral settlement agreement.[1] Mangum argues that because the settlement agreement involved interests in real property and her agreement to

---

1. In her fifth issue, Mangum also asserts that Texas Rule of Civil Procedure 11 negates the trial court's finding of a settlement agreement. To clarify, the Rule 11 Agreement that the Turners sought to enforce was the nonspecific ("The parties to the above litigation agree that all matters in controversy have been settled to the satisfaction of the plaintiff and the defendants.") document the attorneys had signed, but the trial court refused to enforce it, and that ruling is not before us. The Turners apparently never filed and sought to enforce as a Rule 11 agreement the subsequent series of signed documents (the Release, the instruction letter, and Final Take Nothing Judgment). *See, e.g., Padilla v. LaFrance,* 907 S.W.2d 454, 460–61 (Tex.1995)

(series of letters between parties was sufficient to constitute writing that satisfied rule requiring settlement agreements to be in writing and filed with court).

Rule 11 provides, with certain exceptions, that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX.R. CIV. P. 11. But in her motion and supplemental motion for judgment n.o.v., Mangum did not assert Rule 11 as a basis for finding the oral settlement agreement unenforceable. Accordingly, she has not preserved that ground for appeal. *See* TEX.R.APP. P. 33.1(a).

ratify the Oakeses' conveyances to the Turners, the statute of frauds applies.[2]

A contract or agreement for the sale of real estate is not enforceable unless it, or a memorandum of it, is in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. TEX. BUS. & COM.CODE ANN. § 26.01(a), (b)(4) (Vernon Supp.2007). Mangum relies on two cases in support of her statute-of-frauds argument: *Gasperson v. Madill Nat'l Bank*, 455 S.W.2d 381 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.); and *Michael v. Busby*, 139 Tex. 278, 162 S.W.2d 662 (Tex.1942). But as the Turners note, those cases involved oral settlement agreements to convey or transfer interests in real estate. *See Gasperson*, 455 S.W.2d at 389; *Michael*, 139 Tex. at 283, 162 S.W.2d 662. Generally, the statute of frauds applies when " 'the performance promised requires an act that will transfer property in land.' " *Palmer v. Fuqua*, 641 F.2d 1146, 1158 (5th Cir.1981) (quoting 2 A. CORBIN, CORBIN ON CONTRACTS § 398, at 361 (1960)). Nor is the statute of frauds applicable because a real estate transaction is merely incidentally involved. *Bridewell v. Pritchett*, 562 S.W.2d 956, 958 (Tex.Civ.App.-Fort Worth 1978, writ ref'd n.r.e.) (citing *Garcia v. Karam*, 154 Tex. 240, 276 S.W.2d 255 (1955)). Because we find the statute of frauds inapplicable to the oral settlement agreement, we overrule Mangum's first and fifth issues.

## Charge Issues

In her second and third issues, Mangum asserts that the trial court erred in not granting her judgment n.o.v. because the Turners failed to submit a jury question on the existence of a contract to support their cause of action to enforce the contract. Citing Rule 279, Mangum claims that, because the Turners did not submit a jury question on the existence of a contract—*i.e.*, the disputed elements of a contract—they waived the issue and she was entitled to judgment. *See* TEX.R. CIV. P. 279; *Akin v. Dahl*, 661 S.W.2d 911, 913 (Tex.1983); *Glens Falls Ins. Co. v. Peters*, 386 S.W.2d 529, 531 (Tex.1965).

If a question on a ground of recovery is omitted, or the question omits some essential element of a ground of recovery and is submitted to the jury over the objection of the party without the burden of proof, the party who objected to the partial submission is entitled to judgment, even if the jury returns a finding on the submission in favor of the party with the burden of proof. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992); *McKinley v. Stripling*, 763 S.W.2d 407, 410 (Tex.1989). A question or an element omitted from the charge by the party with the burden of proof cannot be deemed in that party's favor when the other party objected to the omission of the missing element or requested its submission. *See Payne*, 838 S.W.2d at 241. The objection or request places the burden of submitting a correct question on the party with the burden of proof, not the trial court, and the result of that party's failure to submit a correct question after objection is waiver of the ground of relief. *McKinley*, 763 S.W.2d at 410; *see also Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 565 (Tex.2002). If, however, the complete theory of recovery or defense was proved as a matter of law, there was no waiver because a jury question is not required. *See Brown v. Bank*

---

**2.** The tendered written release's statement that Mangum was ratifying the prior conveyances' validity is irrelevant to her statute-of-frauds argument as to the oral agreement, which did not purport to include her ratification as a term.

*of Galveston,* 963 S.W.2d 511, 515 (Tex. 1998); Tex.R. Civ. P. 279 ("grounds of recovery or of defense *not conclusively established* under the evidence and no element of which is submitted or requested are waived") (emphasis added); *see also City of Keller v. Wilson,* 168 S.W.3d 802, 814–15 (Tex.2005) ("uncontroverted issues need not be submitted to a jury at all").

■ Rule 279 provides for written findings when elements are omitted from the charge, but such findings are proper only when there was no request or objection from the party without the burden of proof and only before entry of judgment. Tex.R. Civ. P. 279. A trial court may not make a finding on an omitted element when there was a request to submit the omitted question or element or an objection to the defective question. *See Physicians Surgeons Gen. Hosp. v. Koblizek,* 752 S.W.2d 657, 660 (Tex.App.-Corpus Christi 1988, writ denied).

Mangum did not specifically object to the omission of a question on whether a contract existed.[3] She did, however, request a proposed question on her statute-of-frauds defense as it related to the existence of a written contract, but the trial

court refused that request. As noted above, the trial court made the following finding requested post-trial by the Turners: "The Court finds that the settlement agreement between the parties was made prior to the time that Rubye Mangum refused to perform all or part of the settlement agreement."

■ Because Mangum did not object or make a *proper* request,[4] any omitted element of the Turners' ground of recovery can be deemed found if: (1) at least one element of the Turner's cause of action was submitted to the jury and is "necessarily referable" to that cause of action; and (2) the omitted finding is supported by sufficient evidence.[5] *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990); *Emerson Elec. Co. v. Am. Permanent Ware, Inc.,* 201 S.W.3d 301, 310 (Tex.App.-Dallas 2006, no pet.). Moreover, without a specific objection or a proper request, the trial could make a written fact finding on an omitted issue raised by the evidence. *See* Tex.R. Civ. P. 279; *Strauss v. LaMark,* 366 S.W.2d 555, 557 (Tex.1963).

In this case, the submitted question was "necessarily referable" to the Turners' cause of action. Also, the trial court's

---

3. As noted, the only contract question submitted to the jury was whether Mangum authorized her attorney to settle her suit against the Turners on the following terms: (1) the payment of $104,000 to Mangum; and (2) a release of the Turners, including a release of Mangum's claims that the Turners wrongfully acquired the 52 acres and two deeds to mineral estates owned by the Oakeses in Freestone and Limestone Counties. Because of our disposition, we need not decide if this was an adequate broad-form question that inquired into both Mangum's attorney's authority and the existence of the contract that Mangum's attorney entered into.

4. *See Green Tree Fin. Corp. v. Garcia,* 988 S.W.2d 776, 781 (Tex.App.-San Antonio 1999, no pet.) ("The Court's statement implies that the error could have been preserved by either

a specific objection or a proper request.") (citing *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990)). Mangum's requested question on her statute-of-frauds defense was not proper for Rule 279 purposes.

5. The "necessarily referable" requirement is designed to give parties fair notice of, and an opportunity to object to, a partial submission. *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 144 (Tex.App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.). "Once a party is on notice of the independent ground of recovery or defense due to the existence of an issue 'necessarily referable' thereto, if that party fails to object or request submission of the missing issues, he cannot be heard to complain on appeal, as he is said to have consented to the court's findings on the missing issues." *Id.*

finding is supported by sufficient evidence.[6] In addition to the above-mentioned documentary evidence that supports the oral settlement agreement that the parties' attorneys entered into, Mangum's attorney testified that the Turners' attorney accepted his offer to settle the lawsuit for $104,000 and that he had Mangum's permission to make the $104,000 offer, to make the oral settlement agreement, and to sign documents evidencing the settlement. He let Mangum know that the $104,000 offer had been accepted, and his secretary testified that she spoke with Mangum about settlement being reached and that Mangum was thankful and happy. While there was evidence that Mangum later did not agree to the written settlement documents, plainly there was factually sufficient evidence to support the trial court's settlement-agreement finding and the judgment enforcing that settlement agreement.

For the above reasons, we overrule Mangum's second and third issues.

### Factual Sufficiency

Mangum's fourth issue complains that the evidence is factually insufficient on the contract elements of acceptance, mutual assent, and execution and delivery. Here, as in the second and third issues, Mangum's focus is misplaced. The settlement agreement that the trial court found and that the judgment enforces is not the written release agreement that Mangum did not agree to. Instead, as we stated above, the settlement agreement found by the trial court was the original agreement between the parties' attorneys, which the evidence is factually sufficient to support, as we held above. Mangum's fourth issue is overruled.

### Conclusion

Having overruled all of Mangum's issues, we affirm the trial court's judgment.

Chief Justice GRAY, dissenting.

TOM GRAY, Chief Justice, dissenting.

The fundamental question in this proceeding is whether an enforceable contract to settle pending litigation was breached. The most important question, the one I thought was the reason we granted oral argument, is whether Rule 11 is a statute of frauds as to all agreements which purport to settle any matter in pending litigation, including the merits of the litigation, even if the agreement is not otherwise subject to a statute of frauds. That is not the question resolved by the majority.

### SHIPS IN THE NIGHT

I have never seen a more fundamental disconnect between the prevailing parties's argument about what the trial was about and an opinion affirming that victory than in this proceeding. Because the level of the disconnect is so great, no useful purpose would be served by a single judge's review of the issues raised in this appeal. Therefore, after I explain the disconnect, I will only briefly comment on the nature and merits of the appeal.

The majority goes to great effort to differentiate what they view as different

---

6. In a factual sufficiency review, we consider and weigh all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex.App.-Waco 2000, pet. denied). We will set aside the finding only if it is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Ellis*, 971 S.W.2d at 407. Reversal can occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. *Checker Bag*, 27 S.W.3d at 633.

agreements because they view it as dispositive of this appeal. Their entire analysis is based upon it.

## BACKGROUND FACTS

Shortly before an impending trial date, the parties engaged in settlement discussions. At least some of the lawyers and parties believed they had orally agreed to terms that would resolve the dispute. A letter advising the court of what they thought had been accomplished, *i.e.*, settlement, but without any discussion of the terms of the settlement, was signed by the attorneys representing both sides. The letter was filed with the court. I will refer to that document as the Rule 11 letter. The usual documents for the settlement of litigation were then prepared, as well as documents that were unique to the settlement of this proceeding. Those documents were being routed for signatures and all of the attorneys and parties had signed all the documents except the person who brought the original suit—Rubye Mangum.

The Turners initially moved to enforce the Rule 11 letter filed on the eve of trial as a Rule 11 agreement. The trial court denied the request. The Turners then filed a claim for breach of contract. The claim for breach of contract was severed and tried to a jury. After the post-verdict motions and other proceedings, a judgment in favor of the Turners on their breach of contract claim was rendered. This appeal attacks that judgment.

## THE TURNERS'S SHIP

The Turners have defended the trial court's judgment. In doing so, they have, in several places in their brief, described or characterized their claim (originally a counterclaim and then severed). To avoid errors that might be made by me in paraphrasing the Turners's statements, I will set out their positions in their own words.

Mangum presents her "Statement of the Issues" in a two page narrative. The Turners contest the Statement because the issues are premised on the inaccurate contention that the judgment was based on an oral agreement. In contrast to Mangum's representations, the Settlement Agreement, as well as associated documents, was signed by the Turners, their counsel, and Mangum's counsel. The Turners submit that Mangum's Statement of the Issues does not accurately reflect the nature of the trial or the record of the proceedings.

Appellees' brief, pg. 2.

The settlement documents were delivered to Jackson's office. (3RR 96). These documents were 1) a letter to XTO Energy, Inc., directing the payment of $52,000.00 of the suspense royalties to be paid to the Estate of LaVada Oakes (TX 4), 2) a "Full, Final and Complete Release" (TX 5), and 3) a check in the amount of $52,000.00 payable to Rubye Mangum and Reed Jackson (TX 6). The Turners and Martin signed the letter and the Release on October 11, 2005 in Jackson's office, and Jackson's wife notarized their signatures. Jackson signed the Release and the letter on the same day. (3RR 96–97, 132). Jackson and Martin also signed a Take Nothing Judgment to be presented to the court. (TX 7; 3RR 97–98, 133). At the time Jackson signed these documents, he had Mangum's "permission and authority to settle" the lawsuit "per the terms of that settlement." (3RR 98–99).

Jackson received Mangum's authority to settle the case on September 26, 2005 when Mangum called him. (3RR 99). There was no suggestion before the papers were signed that he did not have

the authority to settle the case. (3RR 99). There was no question in his mind that he didn't have Rubye Mangum's authority to settle the lawsuit at the time he and Martin executed the settlement documents on October 11, 2005. (3RR 103).

Appellees' brief, pgs. 11–12.

The counterclaim to enforce the settlement agreement was severed from Mangum's claims by the agreement of the parties. (CR Feb 2, 101–03). The trial court submitted the issue of whether or not Reed Jackson had the authority of his client to settle to the jury. The jury found that Rubye Mangum authorized Reed Jackson to settle the law suit by the payment of $104,000.00 to Mangum and a release by Mangum of her claims against the Turners. (CR Feb 2, 170). Mangum filed two post-verdict motions, a "Motion for Judgment Notwithstanding the Verdict" (CR Mar, 2–13) and a "Supplement to Her Motion for Judgment Notwithstanding the Verdict with Opposition to any Request for Additional Findings." (CR Mar, 45–107).

Turners's brief, pg. 14.

And probably the best statement of what the Turners's claim was about:

This is a suit to enforce a settlement agreement. The agreement was evidenced by a "Full, Final and Complete Release," a letter directing payment of royalties as part of the consideration, a check paying the remainder of the consideration, and a Final Take Nothing Judgment prepared for the signature of the judge. The Release and the letter were signed by Donny and Trent Turner, their attorney, and Rubye Mangum's attorney. The attorneys also signed the Judgment.

Turners's brief, pg. 15.

Then continuing:

Mangum's position is that the question of whether or not an agreement existed had to be submitted to the jury. Mangum argues that because she "contends" there was no agreement, this issue must be resolved by the fact-finder. Contrary to this view, even when an issue is raised by a party's pleadings, if there is no conflict in the evidence with regard to the matter, it should not be submitted to the jury. Mangum cannot and does not dispute the fact that her attorney negotiated and subsequently signed the settlement agreement and associated documents. Because it was uncontroverted that the Turners, their attorney, and Mangum's attorney all agreed to the settlement and signed the documents, asking the jury about the existence of the settlement agreement would have been error.

Turners's brief, pg. 15.

And the following passage makes clear that the trial was not about an oral agreement:

Much of Mangum's argument is based on the proposition that the trial court's judgment enforced an oral agreement. While the Turners' attorney did argue, mid-trial, that an oral agreement could be enforced in this case, that issue is not before the Court because the settlement (and the Turners' performance) was evidenced by the written settlement agreement and associated documents. The Full, Final and Complete Release (TX 5) and the letter directing payment of the suspense royalties (TX 4) were signed by the Turners, their attorney, and Mangum's attorney. "Enforceable Rule 11 Agreements may be signed by counsel, and the signature of the individual parties to the suit is not required." *Batjet, Inc. v. Jackson,* 161 S.W.3d 242, 247 (Tex.App.-Texarkana 2005, no pet.)

Thus, while Mangum's position that she did not authorize her attorney to settle the case undeniably put that discrete issue in dispute, the existence and terms of the settlement agreement were conclusively established by the exhibits noted above. As a result of her myopic denial of the record, Mangum's arguments are suppositioned on the false premise of an oral agreement and therefore lack validity, factual accuracy, and legal support.

Turners's brief, pgs. 17–18.

## THE MAJORITY'S SHIP

The majority has affirmed the Turners's victory. But the majority affirms the judgment on a completely different agreement than the one upon which the Turners tried their case. This is evident when we look at the agreement the majority is relying upon to affirm the trial court's judgment, as well as the agreement the majority is expressly *not* relying upon.

*To avoid the distortion of paraphrasing,* I will again quote passages, this time from the majority's opinion.

In her fifth issue, Mangum also asserts that Texas Rule of Civil Procedure 11 negates the trial court's finding of a settlement agreement. To clarify, the Rule 11 Agreement that the Turners sought to enforce was a nonspecific ("The parties to the above litigation agree that all matters in controversy have been settled to the satisfaction of the plaintiff and the defendants.") document the attorneys had signed, but the trial court refused to enforce it, and that ruling is not before us. The Turners apparently never filed and sought to enforce as a Rule 11 agreement the subsequent series of signed documents (the Release, the instruction letter, and Final Take Nothing Judgment). *See, e.g., Padilla v. LaFrance,* 907 S.W.2d 454, 460–

61 (Tex.1995) (series of letters between parties was sufficient to constitute writing that satisfied rule requiring settlement agreements to be in writing and filed with court).

Maj. Op., pg. 226, fn. 1.

The tendered written release's statement that Mangum was ratifying the prior conveyances' validity is irrelevant to her statute-of-frauds argument as to the oral agreement, which did not purport to include her ratification as a term.

Maj. Op., pg. 227, fn. 2.

And from the majority's discussion of the objections and request regarding the jury charge and the trial court's findings:

In this case, the submitted question was "necessarily referable" to the Turners' cause of action. Also, the trial court's finding is supported by sufficient evidence. In addition to the above-mentioned documentary evidence that supports the oral settlement agreement that the parties' attorneys entered into, Mangum's attorney testified that the Turner's attorney accepted his offer to settle the lawsuit for $104,000 and that he had Mangum's permission to make the $104,000 offer, to make the oral settlement agreement, and to sign documents evidencing the settlement. He let Mangum know that the $104,000 offer had been accepted, and his secretary testified that she spoke with Mangum about settlement being reached and that Mangum was thankful and happy. While there was evidence that Mangum later did not agree to the written settlement documents, plainly there was factually sufficient evidence to support the trial court's settlement agreement finding and the judgment enforcing that settlement agreement.

Maj. Op., pgs. 228–229.

And finally, it could not be more clear that the majority is affirming a judgment based on an alleged oral agreement:

Mangum's fourth issue complains that the evidence is factually insufficient on the contract elements of acceptance, mutual assent, and execution and delivery. Here, as in the second and third issues, Mangum's focus is misplaced. The settlement agreement that the trial court found and that the judgment enforces is not the written release agreement that Mangum did not agree to. Instead, as we stated above, the settlement agreement found by the trial court was the original settlement agreement between the parties' attorneys, which the evidence is factually sufficient to support, as we held above. Mangum's fourth issue is overruled.

Maj. Op., pg. 229.

### THE HARBOR

The Turners's ship is the written documents prepared, circulated, and signed after the Rule 11 letter was filed. The majority's ship is the oral agreement which it contends was made before the Rule 11 letter was prepared and filed. Thus, we have two ships passing in the night; fortunately for the Turners, they do not collide.

But the ships are headed to the same harbor. So, unless there is a legal equivalent to cross-tacking, one or both are on the wrong course. When the legal arguments of the victor and those of the Court's majority are so divergent to get to the result, it is probably a case that was tried on the wrong theory, and in fairness to all parties (in equity) should be reversed and remanded for a new trial.

There may be, however, a legal theory upon which not only is reversal an equitable result, it is a legal safe harbor as well. No one disputes that the Rule 11 letter lacks the specificity required to enforce it as a Rule 11 agreement to settle this case. No one disputes that this suit, the severed suit for breach of contract, was about an agreement between attorneys or parties related to a pending suit.

Because any such agreement is not enforceable unless it is "in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record," Rule 11 is the safe harbor, into which either ship must pass before it can safely drop anchor. Because it does not appear that either agreement made it to this harbor, it appears neither is entitled to enforcement. I will, however, defer a complete analysis of the Rule 11 issue until the course of travel for this litigation is more completely charted.

### CONCLUSION

Rule 11 was adopted for a reason. That reason was to avoid satellite litigation on procedural as well as substantive issues. Now, rather than a trial on the merits of the parties' real dispute, we have had a jury trial and an appeal on a severed breach of contract claim to determine if the other suit on the merits, which, of course, is still pending, was settled. It is clear from the majority opinion that there is not currently an enforceable Rule 11 agreement. However, rather than reversing the trial court's judgment, the majority affirms a judgment which enforces an agreement which "touches" on pending litigation.

If courts are going to do this, there is no tooth, much less teeth, in Rule 11. When I was in private practice, I always thought that until the settlement documents were all fully inked, the "settlement" could fall apart, and we were on for trial. Maybe I was always wrong.

I respectfully note my dissent on the basis of the foregoing discussion.