

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-347-CV

DONG JAE SHIN AND KING'S                    APPELLANTS
TIRE AND AUTO DFW, INC.                     AND APPELLEES

V.

SOLIAMAN SHARIF                                APPELLEE
                                          AND APPELLANT

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellants and Cross-Appellees Dong Jae Shin ("Shin") and King's Tire

and Auto DFW, Inc. ("DFW") appeal the trial court's grant of two summary

judgments in favor of Appellee and Cross-Appellant Soliaman Sharif. In his

---

[1] *See* Tex. R. App. P. 47.4.

appeal, Sharif appeals the trial court's overruling of his objections to Appellants' summary judgment responses and evidence.  We will affirm.

## II. Background

Sharif owned King's Tire and Auto, Inc. ("King's Tire"), a Texas corporation engaged in the wholesale and retail sale of tires, wheels, and auto accessories.  In September 2006, Sharif sold King's Tire to DFW for $2.9 million.[2]  As part of the purchase, Shin paid Sharif $1 million at the closing, and DFW executed two promissory notes dated October 2, 2006, in favor of Sharif: one in the amount of $200,000 and the other in the amount of $1.7 million. Shin executed a "Guaranty" for the $200,000 promissory note and a "Guaranty" for the $1.7 million promissory note.  DFW also entered into a "Lease with Purchase Option" agreement with Sharif in which DFW leased the business property from Sharif for $3,700 per month.

Sharif subsequently sued Appellants for, among other things, breach of contract.  Sharif alleged that DFW failed to make any payments under either promissory note, that Shin "failed and refused to make[] any payments or otherwise guarantee the obligations described in the Guaranty Agreement, despite demands from" Sharif, and that Shin was in breach of the guarantee

_____

[2] According to Sharif, Shin is the President of DFW, an entity that he formed.

2

agreements. Appellants answered and asserted counterclaims against Sharif for fraudulent inducement, common law fraud, violations of the Texas Deceptive Trade Practices Act, breach of contract, conversion, and unjust enrichment. Appellants sought economic, actual, multiple, and exemplary damages and also sought damages for mental anguish.

Sharif filed a motion for partial summary judgment, arguing that he has a security interest as a matter of law in the inventory, assets, and equipment pursuant to the lease agreement and the promissory notes. Sharif later filed a second motion for partial summary judgment on his claims for breach of the guaranty agreements; he asked the trial court to enter an order that Shin be held personally liable for breach of both guaranty agreements and that he recover damages from Shin in the amounts of $200,000 and $1.7 million. Sharif also filed a no-evidence motion for summary judgment on Appellants' counterclaims and damages.

Sharif filed objections to Appellants' responses to the second motion for partial summary judgment and the no-evidence motion for summary judgment. The trial court signed an amended final judgment granting all three of Sharif's motions for summary judgment, and it ordered that Sharif recover from Shin damages in the total amount of $1.9 million. These appeals followed.

3

### III. STANDARDS OF REVIEW

Under a traditional motion for summary judgment, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215. Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

Under a no-evidence motion for summary judgment, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the

4

nonmovant's claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the elements for which there is no evidence.  *Id.*; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).  We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.  *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

## IV.  GUARANTY AGREEMENTS

In Appellants' second issue, Shin argues that the trial court erred by granting Sharif's second motion for partial summary judgment on Sharif's claims for breach of the guaranty agreements.

A guaranty agreement is a person's promise to perform the same act that another person is contractually bound to perform.  *Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  A guaranty creates a secondary obligation under which the guarantor promises to answer for the debt of the primary obligor if the primary obligor fails to perform.  *Garner v. Corpus Christi Nat'l Bank*, 944 S.W.2d 469, 475 (Tex. App.—Corpus Christi 1997, writ denied).  To recover under a guaranty agreement, a plaintiff must show (1) the existence and ownership of the guaranty agreement, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or the refusal to perform the promise by the guarantor.  *Byrd v. Estate of Nelms*, 154 S.W.3d 149, 157 (Tex. App.—Waco 2004, pet. denied); *Roye Enter., Inc. v. Roper*, No. 02-04-00132-CV, 2005 WL 1791964, at *3 (Tex. App.—Fort Worth July 28, 2005, no pet.) (mem. op.); *see also Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 107 (Tex. App.—Dallas 1987, writ ref'd

n.r.e.) (stating that when a guaranty is in writing and signed by the guarantor, the guaranty's existence presumes consideration).

Here, both guaranty agreements are in writing, both are signed by Shin, and both are dated October 2, 2006—the same date that DFW executed the promissory notes. Both guaranty agreements identify Shin as the "Guarantor," DFW as the "Borrower," and Sharif as the "Lender." The "Guaranteed Indebtedness" for the $200,000 promissory note is "[t]he debt evidenced by the note dated October 2, 2006, in the original principal amount of $200,000.00, executed by [DFW] and payable to the order of [Sharif]." The "Guaranteed Indebtedness" for the $1.7 million promissory note is "[t]he debt evidenced by the note dated October 2, 2006, in the original principal amount of $1,700,000.00, executed by [DFW] and payable to the order of [Sharif]." Both guaranty agreements state, "Guarantor agrees to pay, when due or declared due, the Guaranteed Indebtedness to Lender." Both guaranty agreements state, "This guaranty is an absolute, irrevocable, unconditional, and continuing guaranty of payment and performance and not of collection." And both guaranty agreements state, "[Sharif] need not resort to [DFW] or any other person or proceed against collateral before pursuing [his] rights against [Shin] or any other guarantor."

7

Sharif stated in his affidavit attached to his second motion for partial summary judgment that he has performed his obligations under the promissory notes and guaranty agreements, that he has not received a single payment under either promissory note or under either guaranty agreement, and that he has suffered damages in the amount of $200,000 under the first promissory note and of $1.7 million under the second promissory note.

We hold that Sharif produced sufficient evidence to establish his right to summary judgment on his claim that Shin breached the guaranty agreements. The burden shifted to Shin to come forward with competent controverting evidence raising a genuine issue of material fact. *See Centeq Realty, Inc.*, 899 S.W.2d at 197.

Shin argues that he raised a genuine issue of material fact on Sharif's breach of contract claims because Sharif waived his right to payment under the guaranty agreements and because Sharif is estopped from collecting under the guaranty agreements. To support these contentions, Shin directs us to his affidavit in which he states that he and Sharif orally altered the written guaranty agreements. The affidavit states in relevant part as follows:

> When the business was not generating much income at all during [the] months of October, November, December 2006, [Sharif] was aware of the situation that I could not pay the rent or payments under the promissory notes. In fact, when the due date for the first monthly payment of about $25,000 under 1.7 million dollar

8

came, *[Sharif] asked me not to pay monthly rent or promissory notes for the time being and until business got better. I was assured that I did not [have to] pay rent payments or the payments under that 1.7 million dollars note* since [Sharif] admittedly owed me at least $300,000.00 from the date of the closing, and continued to owe me because of transfer of inventories from DFW to Empire Tire. . . .

. . . *I was assured again by [Sharif] that I did not have to pay the monthly payment under the note and under my personal guarantee* because the business was not making enough money to pay monthly payments of the note. . . .

. . . .

. . . *It was mutually underst[ood] that [Sharif] would waive payments due under the two promissory notes* because the business was not generating enough income to pay for the payments and serious negotiation between [Sharif] and me was going on. [Emphasis added.]

Regarding the $200,000 promissory note, Shin directs us to deposition testimony in which Sharif testified that he "would cover" the note because he owed Shin $200,000 worth of inventory.[3]

Shin also argues that he raised a genuine issue of material fact on Sharif's breach of contract claims because there is evidence that Shin is entitled to a "set-off against the payments due to Sharif under the guaranty agreement on the $200,000 Note." None of Shin's arguments are compelling.

---

[3] Appellants' exhibit containing deposition excerpts does not have a title page, does not identify the deponent or parties, and does not have a reporter's certificate.

9

We construe a guaranty as any other contract.[4] *Mid-South Telecomm. Co. v. Best*, 184 S.W.3d 386, 390 (Tex. App.—Austin 2006, no pet.). Parties to a written contract within the statute of frauds may not by oral agreement alter the terms of the contract and make a new contract resting partly in writing and partly in parol. *Michael v. Busby*, 139 Tex. 278, 282–83, 162 S.W.2d 662, 664 (1942); *see also David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (stating that an unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imparts); *Standard Constructors, Inc. v. Chevron Chem. Co.*, 101 S.W.3d 619, 624 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (stating

---

[4] Our primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 810 (Tex. App.—Fort Worth 2006, pet. denied). This is achieved by examining and considering the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393. We presume that the parties to the contract intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). We give terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. *Heritage Res.*, 939 S.W.2d at 121.

that extrinsic evidence is not admissible to contradict or vary the meaning of unambiguous language in a written contract).

Shin does not argue that the promissory notes or guaranty agreements are ambiguous. Thus, under well-established rules of contract construction, we are required to construe the promissory notes and guaranty agreements as written. The evidence of the alleged oral alterations of the terms of the promissory notes and guaranty agreements may not be used to raise a fact issue on Sharif's breach of contract claims because the evidence is extrinsic and contradicts or varies Shin's and Sharif's true intentions as expressed in the plain language of the written instruments. *See Michael*, 162 S.W.2d at 664; *see also Haden*, 266 S.W.3d at 450; *Standard Constructors, Inc.*, 101 S.W.3d at 624. Shin and Sharif also specifically contemplated and addressed in the guaranty agreements how such evidence relied upon by Shin is to be addressed. The guaranty agreements state the following:

> 11. FINAL AGREEMENT: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

11

Thus, the guaranty agreements themselves expressly provide that they may not be contradicted by the alleged subsequent oral alterations or agreements relied upon by Shin to raise a genuine fact issue.

We hold that Shin failed to produce competent, controverting evidence raising a genuine issue of material fact as to Sharif's breach of contract claims and that the trial court did not err by granting Sharif summary judgment on those claims. *See* Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co.,* 73 S.W.3d at 215. We overrule Appellants' second issue.

## V. SHIN'S COUNTERCLAIMS

In Appellants' first issue, DFW argues that the trial court erred by granting Sharif's no-evidence motion for summary judgment on DFW's fraud, fraud in the inducement, breach of contract, conversion, and unjust enrichment counterclaims.

### A.    Fraud and Fraud in the Inducement

The elements of common law fraud are that (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury.

12

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998). Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Hasse v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001); *see also Walker v. TRB Bancorp, Inc.*, No. 05-07-00901-CV, 2008 WL 2738013, at *4 (Tex. App.—Dallas July 15, 2008, pet. denied) (mem. op.) (stating that a fraudulent inducement claim has the same elements as a fraud claim, plus the added element that the fraud related to an agreement between the parties).

DFW argues that Sharif failed to include accounts payable in the representations regarding King's Tire's past profitability, that there were inventory amount misrepresentations, and that invoices show that Sharif ordered goods from DFW's wholesale vendors using DFW's credit line even though Sharif said he would purchase goods from DFW. DFW directs us to numerous documents purportedly evidencing representations made by Sharif relating to King's Tire's sales revenue history, sales summary, inventory summaries, profit-and-loss statements, and monthly purchases by vendors. DFW also points to an October 12, 2007 invoice listing King's Tire as the purchaser of numerous items from "BZO Custom Wheels" and to portions of

13

Shin's affidavit, including part in which Shin states that Sharif made certain representations about the profitability of the business.

Assuming without deciding that DFW's summary judgment evidence is admissible, none of it raises a genuine issue of material fact that Sharif made a material, false representation that was known to be false or that was made recklessly and without any knowledge of the truth. *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 524. Shin's affidavit contains several conclusory, self-serving statements that do not constitute summary judgment evidence, including that Sharif "manipulated" his profit numbers because "the profit margin changed when [Shin] took over," that Sharif "deceptively hid[]" accounts payable to show a profit in 2005 and part of 2006, and that Sharif "fraudulently induced [Shin] to purchase" the business. The remainder of Shin's summary judgment evidence consists almost entirely of numerical data, which does not demonstrate any fraud by Sharif. Because DFW failed to raise a genuine issue of material fact on one or more challenged fraud and fraudulent inducement elements, we hold that the trial court did not err by granting summary judgment in favor of Sharif on Appellants' fraud and fraudulent inducement counterclaims. *See* Tex. R. Civ. P. 166a(i). We overrule this part of Appellants' first issue.

14

**B.    Breach of Contract**

The elements of a breach of contract are that (1) the plaintiff and defendant had a valid, enforceable contract; (2) the plaintiff performed or tendered performance of the contractual obligations; (3) the defendant breached the contract; and (4) the defendant's breach caused the plaintiff's injuries. *West v. Brenntag Sw., Inc.*, 168 S.W.3d 327, 337 (Tex. App.—Texarkana 2005, pet. denied).

DFW argues that Sharif failed to move for summary judgment on its counterclaim that Sharif wrongfully terminated the lease. In its "Counterclaims and Application for Injunctive Relief" pleading, DFW identified its claim that Sharif wrongfully terminated the lease agreement as a "Breach of contract" claim. In Sharif's no-evidence motion for summary judgment, he specifically challenged each element of DFW's "Breach of Contract" claim. We hold that Sharif moved for summary judgment on DFW's counterclaim that Sharif wrongfully terminated the lease. *See* Tex. R. Civ. P. 166a(i) (requiring motion to specifically state the elements for which there is no evidence).

DFW argues that it raised a genuine issue of material fact on its counterclaim that Sharif wrongfully terminated the lease. The only evidence that DFW contends supports its counterclaim that Sharif wrongful terminated the lease is Sharif's alleged statements to Shin that Shin could begin to make

15

lease payments when the business became busier. The written "Lease with Purchase Option" agreement, however, reveals that DFW agreed to lease the premises from October 2, 2006, through September 30, 2016, and that DFW agreed to pay a base monthly rent of $3,700. Just as Shin's evidence of the alleged oral alterations to the terms of the promissory notes and guaranty agreements could not be used to raise a fact issue on Sharif's breach of contract claims, the same type of evidence (subsequent oral alterations or agreements) may not be used to raise a fact issue on DFW's wrongful termination of the lease claim. *See Michael*, 162 S.W.2d at 664; *see also Haden*, 266 S.W.3d at 450; *Standard Constructors, Inc.*, 101 S.W.3d at 624.

DFW further argues that it raised a genuine issue of material fact on the counterclaim that Sharif breached a "Territorial Exclusivity Agreement."[5] Excluding Shin's affidavit, there is nothing in the promissory notes, the guaranty agreements, the "Lease with Purchase Option" agreement, the "Settlement Statement,"[6] or any other document in the record relating to DFW's transaction with Sharif that references or refers to a territorial exclusivity agreement. Thus, to the extent such an agreement existed between

---

[5] Shin stated in his affidavit that King's Tire had a "territorial exclusive contract with nationwide wheel suppliers."

[6] This document contains summaries of DFW's transaction and King's Tire's transaction as they relate to the sale of Sharif's business.

16

Sharif and his vendors when Sharif owned and operated King's Tire, there is no evidence that the agreement was part of the bargained-for exchange between DFW and Sharif for the purchase of Sharif's business. Moreover, there is no evidence demonstrating that Sharif and DFW had a separate, valid, enforceable agreement regarding a territorial exclusivity agreement. *See West*, 168 S.W.3d at 337 (stating that a valid, enforceable contract must contain an exchange of obligations of value to each contracting party, reciprocally or mutually induced).

We hold that DFW failed to raise a genuine issue of material fact on one or more challenged breach of contract elements and that the trial court did not err by granting summary judgment in favor of Sharif on Appellants' breach of contract counterclaims. *See* Tex. R. Civ. P. 166a(i). We overrule this part of Appellants' first issue.

## C. Conversion

To establish conversion of personal property, a plaintiff must prove that (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded

17

return of the property; and (4) the defendant refused to return the property.[7]

*Augillard v. Madura*, 257 S.W.3d 494, 500 (Tex. App.—Austin 2008, no pet.).

DFW argues that it raised a genuine issue of material fact on its conversion counterclaim because Shin stated in his affidavit that Mr. Rizik, Sharif's brother, "took three checks ($1542, $3745, $2051) in the aggregate amount[] of $7338 . . . payable to [DFW]" and deposited them in Sharif's business account. This evidence does not demonstrate that Sharif unlawfully exercised dominion and control over the checks; it demonstrates that Rizik, a DFW employee, exercised dominion and control over the checks.[8] If anything, this might be evidence of a possible embezzlement by Rizik, not a conversion by Sharif. We hold that DFW failed to raise a genuine issue of material fact on one or more challenged conversion elements and that the trial court did not err by granting summary judgment in favor of Sharif on Appellants' conversion counterclaim. *See* Tex. R. Civ. P. 166a(i). We overrule this part of Appellants' first issue.

---

[7] Some case law provides that the demand and refusal elements are not required if other evidence establishes an act of conversion. *See, e.g., Burns v. Rochon*, 190 S.W.3d 263, 270 n.2 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

[8] Shin states in his affidavit that after he purchased Sharif's business, he "let Rizik . . . run the business as a store manager as he had been doing all along."

**D.    Unjust Enrichment**

Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits. *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied). Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Id*. A party may recover under the theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *see also Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 788 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("Unjust enrichment is not . . . a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant, or because the benefits to the person sought to be charged amount to a windfall.").

Here, DFW argues that Sharif was unjustly enriched because he "transferr[ed] DFW's inventory to himself for his Empire Tire business, puchas[ed] inventory from DFW's wholesalers for himself, and . . . deposit[ed] checks belonging to DFW into his own account." To the extent DFW relies on evidence that Sharif allegedly breached a "territorial exclusivity agreement," we

19

have already held above that there is no evidence demonstrating that Sharif and DFW had a separate, valid, enforceable agreement regarding a territorial exclusivity agreement. To the extent DFW relies on evidence that checks payable to DFW were converted, we have already reasoned above that such evidence does not demonstrate that Sharif exercised dominion and control over the checks. There is no evidence that Sharif accomplished any of the complained-of activities by fraud, duress, or the taking of an undue advantage, nor is there any evidence that Sharif received the alleged benefits unjustly. As Sharif points out, there is nothing in the record that prohibited Sharif from competing with DFW. We hold that DFW failed to raise a genuine issue of material fact on its challenged unjust enrichment counterclaim and that the trial court did not err by granting summary judgment in favor of Sharif on Appellants' unjust enrichment counterclaim. *See* Tex. R. Civ. P. 166a(i). We overrule the remainder of Appellants' first issue.

## VI. Sharif's Appeal

Sharif argues in three issues that the trial court erred by overruling his objections to Appellants' summary judgment responses and evidence. Appellants respond that Sharif waived the objections or that the objections are without merit. Having overruled Appellants' two issues, however, Sharif's issues are moot. We overrule Sharif's issues.

## VII. CONCLUSION

Having overruled Appellants' two issues and Sharif's issues, we affirm the trial court's judgment granting Sharif's motions for summary judgment.

BILL MEIER
JUSTICE

PANEL:  CAYCE, C.J.; MCCOY and MEIER, JJ.

DELIVERED:  June 4, 2009